**LEWIS AND ROCA LLP LAWYERS**

40 North Central Avenue
Phoenix, Arizona 85004-4429
Telephone: (602) 262-5311

David D. Garner, State Bar No. 020459
Direct Dial: 602 262-5335
Direct Fax: 602 734-3891
EMail: DGarner@LRLaw.com

Myles Morrison, State Bar No. 026321
Direct Dial: (602) 262-5379
Direct Fax: (602) 748-2538
EMail: MMorrison@LRLaw.com

Attorneys for Plaintiff
Wells Fargo Bank, National Association

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Wells Fargo Bank, National Association, <br><br> Plaintiff, <br><br> vs. <br><br> The Magellan Owners Association, a.k.a., The Magellan Ship Owners Association, a Delaware corporation; Acanitt Ltd.; Alcan Associates Limited, a Virginia limited partnership; Daniel T. Allen and Victoria A. Allen; Janet Amaral and Walt Amaral; Thomas R. Arnold; BAL Investment Group, LLC, a Florida limited liability company; David G. Baker Living Trust DTD April 29, 2005 and its Trustee(s); Joseph Benedetto; Jeorg Boese; Joselynn M. Brazier and Darcy D. Sitgraves; Julian C. Chen and Phoebe Chen; Rose Cheung and Steve T. Wong; Daniel Dragos Cinca; Mark Cooper and Ruth Cooper; Coviello Family Living Trust and its Trustee(s); Cramer Family (Survivor's) Trust U.T.D.6-12-90 and its Trustee, Lorraine A. Cramer; Patricia Eretto and Frederic Schoen; Diaa Fahmy and Odette Fahmy; Dr. Benjamin Feldman; Frank C. Fulco and Kathleen Fulco; Michael Gopin; Donna Grainger and Michael Grainger; James Haglund and Patty Haglund; Harborage Leasing Corp., a New Hampshire corporation; Lena Humber Family Trust and its Trustee(s); Edward Iacino and Roberta Iacino; Jorge Inclan; Cecily H. Jaynes Family Trust and its Trustee, Cecily H. Jaynes; Robert Johnston; Stuart Karu; Anthony Kelly and Louise Kelly; Carol A. Kornievsky and George M. Kornievsky; Chantal Lapalme and Frank Andree Lapalme; Mark Levey; Paul D. Lubell; John McMahan; Donald W. Mason | No. <br><br> **COMPLAINT FOR INTERPLEADER AND PERMANENT INJUNCTION, AND MOTION TO DEPOSIT FUNDS OR, ALTERNATIVELY, TO APPOINT SUCCESSOR ESCROW AGENT** |

LEWIS AND ROCA LLP LAWYERS

and Tomie Mason; Linda Menard; Charles E. Miller, Sr. and Rita S. Miller Revocable Trust and its Trustees, Charles E. Miller, Sr. and Rita S. Miller; David Miller; O'Hara Family Trust and its Trustees, Gary J. and Janice D. O'Hara; Ruperto Ouano; Weltert Jori Patrizia; Dean Polik and Gwenn Polik; Howard Polskin and Philippa Polskin; Prata Investments, Inc., a Florida corporation; Richard Radeka and Sharon Radeka; Dr. Atef Rafla and Amany Farid; Donald Riker and Leigh Riker; Carol Holmes Riley and Richard Andrew Riley; Tracy Root; Robert Ross and; Winnie Ross; Jon Roudels; SATA Holdings, LLC, a Texas limited liability company; Maria Fernanda Olivieri Sangiacomo; Robert Schreurs and Maureena Schreurs; The Martin Shafron and Margaret Shafron Revocable Trust and its Trustee(s); Esther Shelden; Daniel Shia, Hui-Yun Yuan and Jonathan Shia; Mark Shumate; Darlene Spevakow and Robert Spevakow; Robert J. Stiff and Susan C. Stiff; Ed Teraskiewicz; William E. Thomas; John Trotter; Vitacura, Inc., a Puerto Rico corporation; Danna Walker and Carol Brown; Dr. Ezzat Wassef; Weis Family 2005 Trust, dated Sept. 24, 2005, and its Trustees, Timothy C. Weis and Tracy L. Weis, and their Successors; Sharyne Wolfe and Mitchel Wolfe; Irvin Wright,

                Defendants.

## INTRODUCTION

Wells Fargo Bank, National Association ("Wells Fargo"), files this interpleader action under 28 U.S.C. §§ 1335, 1397, and 2361. Defendants are The Magellan Owners Association, a.k.a. The Magellan Ship Owners Association and various buyers of interests in the Association whose funds are being held in escrow by Wells Fargo in connection with the contemplated construction of a large residential cruise ship. Defendants have made competing claims to the funds held in escrow by Wells Fargo. Additionally, Wells Fargo has resigned as escrow agent. Wells Fargo cannot resolve these conflicting claims without deciding disputed questions of fact and law and exposing

2030685.1

itself to the possibility of multiple liability for the disputed funds.  Accordingly, Wells Fargo respectfully requests that this Court:

>   (1) Allow it to deposit the disputed funds with the Clerk of the Court or, in the alternative, to maintain or disburse the disputed funds in any manner as the Court directs;
>
>   (2) Discharge Wells Fargo from further liability relating to the funds;
>
>   (3) Order the defendants to interplead their claims to the funds;
>
>   (4) Permanently enjoin the defendants from bringing any claim or action against Wells Fargo relating to those funds; and
>
>   (5) Award Wells Fargo its costs and reasonable attorney's fees from the interpleaded funds.

## I.   PARTIES.

1.   Plaintiff, Wells Fargo, is a national banking association organized and existing pursuant to the federal banking laws of the United States of America and is authorized to do business in the State of Arizona.

2.   Defendant The Magellan Owners Association, a.k.a., The Magellan Ship Owners Association ("Magellan"), is, and at all relevant times was, a corporation incorporated under the laws of the State of Delaware.  Upon information and belief, Magellan is, and at all relevant times was, doing business in the State of Arizona.

3.   The remaining defendants (collectively, "Buyers") are, upon information and belief, citizens of various states and countries, including but not limited to, California, Florida, Washington, Maryland, Arizona, New York, Mexico, Australia, Italy, Romania and The Netherlands.

## II.   JURISDICTION.

4.   This Court has subject-matter jurisdiction under 28 U.S.C. § 1335 because the amount in controversy exceeds $500, at least two of the defendants are citizens of different states, the defendants have adverse claims to the funds in the Wells Fargo

escrow, and Wells Fargo will deposit the funds with the Clerk of the Court (assuming that this Court gives it permission to do so).

**III.   VENUE.**

5.     Venue is appropriate in the District of Arizona under 28 U.S.C. § 1397 because at least one of the defendants resides in Arizona.

6.     Venue is also appropriate in the District of Arizona under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the adverse claims to the funds occurred in Arizona.

**IV.   FACTS.**

7.     Upon information and belief, Magellan has offered for sale to third-party buyers shares of stock in Magellan and has entered into full ownership and/or fractionalized ownership proprietary residential leases to the residential units (collectively, the "Units") in a yet-to-be-built cruise ship (the "Ship"), pursuant to the terms set forth in "Purchase and Sale Agreements."

8.     Upon information and belief, Magellan and Buyers have entered into individual Purchase and Sale Agreements, as described in the preceding paragraph.

9.     Upon information and belief, the Purchase and Sale Agreements require each Buyer to pay an initial deposit equal to or greater than twenty-five percent (25%) of the total purchase price of the Unit(s) that is/are the subject of the Purchase and Sale Agreement (the "Initial Deposit").

10.    Upon information and belief, the Purchase and Sale Agreements further require, subject to the terms and conditions stated therein, that Buyers deliver the balance of the purchase price for the Units (the "Closing Payment"), as well as "Annual Cooperative Assessments" payable on account of the estimated Ship operating expenses for the first year of Ship operations.

11.    On or about June 2, 2006, Magellan and Wells Fargo executed an escrow agreement (the "Escrow Agreement"), which set forth the terms and conditions under

2030685.1

which Wells Fargo accepted appointment as Escrow Agent for funds provided to Magellan under the Purchase and Sale Agreements, whether Initial Deposits, Closing Payments, or Annual Cooperative Assessments (collectively, the "Funds").

12. A true and accurate copy of the Escrow Agreement, as most recently amended on or about March 5, 2007, is attached hereto as Exhibit A.

13. Pursuant to the terms of the Escrow Agreement, Wells Fargo opened two escrow accounts (collectively, the "Escrow Accounts"): (1) the "Purchase Escrow Account," in which were deposited funds received from, and identified by Magellan as constituting, either an Initial Deposit or Closing Payment; and (2) the "ACA Escrow Account," in which were deposited funds received from, and identified by Magellan as constituting Annual Cooperative Assessment payments.

14. Section 3 of the Escrow Agreement provides that, within three (3) days after receipt and collection of buyer Funds by the Escrow Agent, the Escrow Agent shall release to Magellan an amount equal to ten percent (10%) of the purchase price for each Unit (collectively, the "Initial Disbursements").

15. Section 3 of the Escrow Agreement provides that, with the exception of Initial Disbursements, all other buyer Funds shall be disbursed from the Escrow Accounts only upon written certification by Magellan that (1) all conditions prerequisite to disbursement, as set forth in the Escrow Agreement, have been satisfied, or (2), in the case of a particular Buyer, Buyer has committed a default which has not been cured in accordance with the provisions of the Purchase and Sales Agreement.

16. In the event Magellan has not satisfied the conditions identified in the Escrow Agreement on or before the termination date of the Escrow Agreement, Wells Fargo may disburse to each Buyer (or Buyer's lender, as applicable) the balance of the buyer Funds attributed to each Buyer, but only upon written instruction of Magellan.

2030685.1

17. As of the date of this filing, Magellan has not provided to Wells Fargo certification that the conditions prerequisite to disbursement of the remaining buyer Funds, as set forth in the Escrow Agreement, have been satisfied.

18. Pursuant to section 10 of the Escrow Agreement, "[t]he Escrow Agent may resign at any time by furnishing written notice of its resignation to the Company and Buyers," and "[i]f [Magellan] have [sic] failed to appoint a successor prior to the expiration of thirty (30) days following receipt of the notice of resignation . . . , the Escrow Agent may petition any court of competent jurisdiction for the appointment of a successor escrow agent and for other appropriate relief, and any such appointment shall be binding upon [Magellan]."

19. Pursuant to section 11 of the Escrow Agreement, the Escrow Agent may, "in its sole and absolute discretion," interplead buyer Funds with any court of competent jurisdiction if any disagreement or dispute arises between Magellan and Buyers concerning buyer Funds or any matter relating to the Escrow Agreement.

20. Section 11 of the Escrow Agreement further provides, *inter alia*, that, upon filing the interpleader action, the Escrow Agent (1) shall be relieved from all liability as to the buyer Funds, (2) shall be entitled to recover its attorneys' fees and costs incurred in commencing and maintaining the interpleader action, and (3) shall not be made a party in connection with the underlying disputes between Magellan and Buyers.

21. On February 9, 2009, Wells Fargo resigned as Escrow Agent in accordance with section 10 of the Escrow Agreement. A true and accurate copy of Wells Fargo's Notice of Resignation As Escrow Agent, the original of which was furnished to Magellan and copies of which were furnished to Buyers, is attached hereto as Exhibit B.

22. Magellan has failed to appoint a successor escrow agent prior to the expiration of thirty (30) days following receipt of the notice of resignation of Wells Fargo as Escrow Agent.

. . .

2030685.1



## V.   CLAIMS.

23. The defendants have adverse claims to the Funds in the Escrow Accounts.

24. A number of Buyers have made demand on Wells Fargo for return of buyer Funds and have raised various legal claims—directed at Magellan—in support of their demands, including but not limited to claims of fraud, violation of securities laws, anticipatory breach, and mutual mistake.

25. With the exception of four buyers who were entitled to return of their funds pursuant to the express language of the Purchase and Sales Agreement, Magellan has not authorized return of Funds in response to Buyer demands.

26. Wells Fargo cannot return buyer Funds, nor can it maintain the buyer Funds in the Escrow Accounts, without deciding disputed issues of fact and law—and therefore exposing itself to the possibility of multiple liability.

27. Wells Fargo is a mere stakeholder, whose obligations under the Escrow Agreement are purely ministerial in nature. Wells Fargo claims no right to the funds from the Escrow Accounts at issue. Wells Fargo is willing to either deposit the Funds with the Clerk of the Court, or to hold the Funds in the accounts at issue pending the Court's final decision as to the appropriate disposition of the Funds.

28. Alternatively, the Court may appoint a successor Escrow Agent or order "other appropriate relief," as provided in section 10 of the Escrow Agreement.

29. Interpleader is proper under 28 U.S.C. § 1335 because:

    A.    The amount in dispute is more than $500;

    B.    Two or more adverse claimants are claiming or may claim to be entitled to the funds in the accounts at issue;

    C.    At least two of the adverse claimants are citizens of different states; and

    D.    Wells Fargo is willing to deposit the funds with the Clerk of the Court, assuming that this Court grants it permission to do so.

2030685.1



30. As a stakeholder, Wells Fargo is entitled to its reasonable costs and attorney's fees, to be deducted from the interpleaded funds. *Schirmer Stevedoring Co., Ltd. v. Seaboard Stevedoring Corp.*, 306 F.2d 188, 194 (9th Cir. 1962) ("[T]he proper rule . . . in an action in the nature of interpleader, is that the plaintiff should be awarded attorney fees for the services of his attorneys in interpleading."); *Gelfren v. Republic Nat'l Life Ins. Co.*, 680 F.2d 79, 81 (9th Cir. 1982) ("[I]t is within the court's discretion to award costs to the stakeholder.").

## VI. PRAYER FOR RELIEF.

WHEREFORE, plaintiff Wells Fargo requests the following relief:

1. An order from the Court requiring the defendants to interplead together concerning their adverse conflicting claims to the assets in the accounts at issue;

2. An order from the Court directing the Clerk of Court to accept the assets in the escrow accounts at issue or, in the alternative, directing Wells Fargo to hold the assets pending the Court's final disposition, or, in the alternative, appointing a successor Escrow Agent;

3. An order from the Court stating that Wells Fargo is forever discharged from liability to each and every defendant in regard to the subject matter of this action, as of the date of delivery of the assets in the accounts at issue by Wells Fargo to the Clerk of Court or to the court-appointed successor Escrow Agent; or, alternatively, as of the date the Court directs Wells Fargo to hold the assets pending the Court's final disposition;

4. A judgment restraining the defendants and their attorneys and agents, from initiating any proceedings against Wells Fargo in connection with the assets in the accounts at issue;

5. An order awarding Wells Fargo its costs and reasonable attorney's fees incurred in this action to be paid from the assets held in the accounts at issue; and

2030685.1

6.    For any other relief that the Court deems appropriate, just and proper.

DATED this ___ day of March, 2009.

                LEWIS AND ROCA LLP

By   s/ David D. Garner
       David D. Garner
       Myles Morrison
Attorneys for Plaintiff
Wells Fargo Bank, N.A.

2030685.1