**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wells Fargo Bank, N.A., | No. CV-09-587-PHX-MHM |
| Plaintiff, | **ORDER** |
| vs. | |
| The Magellan Owners Association, et al., | |
| Defendant. | |

Currently pending before the Court is Plaintiff Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion to Deposit Funds (Dkt.#168), and Defendant Magellan Owners Association's ("Magellan") Motion to Dismiss, (Dkt.#148). After reviewing the pleadings and determining oral argument unnecessary, the Court issues the following Order.

**I. BACKGROUND**

According to the Complaint, Magellan entered into Purchase and Sales Agreements with the various named Defendants in this suit. The purpose of these agreements was to either transfer shares of stock in The Magellan Ship Owners Association or sell full or fractionalized ownership interests in residential units in a yet-to-be-built luxury cruise ship. The Purchase and Sales Agreement required each Buyer to pay an initial deposit equal to or greater than twenty-five percent of the total purchase price of each unit purchased. The

agreement further required that each buyer, at closing, deliver the balance of the purchase price, as well as an Annual Cooperative Assessment payable on account of the estimated ship operating expenses.

On June 2, 2006, Magellan entered into an escrow agreement with Wells Fargo, which set forth the terms and conditions under which Wells Fargo accepted appointment as Escrow Agent for funds provided to Magellan under the Purchase and Sale Agreements. Pursuant to the terms of the Escrow Agreement, Wells Fargo opened two escrow accounts: (1) Purchase Escrow Account, and (2) the Annual Cooperative Assessment Escrow Account. Section 3 of the Escrow Agreement states that, within three days after receipt and collection of buyer funds by Wells Fargo acting as Escrow Agent, the Escrow Agent shall release to Magellan an amount equal to ten percent of the purchase price for each unit sold. Aside from this initial disbursement of funds to Magellan, Section 3 of the Escrow Agreement states all other buyer monies shall be disbursed from the Escrow only upon written certification by Magellan that (1) all conditions prerequisite to disbursement, as set forth in the Escrow Agreement, have been satisfied, or (2), in the case of a particular Buyer, Buyer has committed a default which has not been cured in accordance with the provisions of the Agreement. The Escrow Agreement lastly states that in the event Magellan has not satisfied the conditions identified in the Escrow Agreement on or before the termination date of the Escrow Agreement, Wells Fargo may disburse to each Buyer the balance of the buyer Funds attributed to each Buyer, but only upon written instruction of Magellan.

Under Section 11 of the Escrow Agreement, Wells Fargo acting as Escrow Agent may, "in its sole and absolute discretion," interplead Buyer funds with any court of competent jurisdiction if any disagreement or dispute arises between Magellan and Buyers concerning Buyer funds or any matter relating to the Escrow Agreement. On February 9, 2009, Wells Fargo resigned as Escrow Agent in accordance with Section 10 of the Escrow Agreement. On March 24, 2009, Wells Fargo filed a Complaint which requested that the Court commence a statutory interpleader action pursuant to 28 U.S.C. § 1335. According to the Complaint, Wells Fargo claims no interest in the funds held in escrow, and that a court

ordered dispersement through the interpleader process is necessary, as a number of Buyers have made demand on Wells Fargo for return of funds and have raised various legal claims—directed at Magellan—in support of their demands. Lastly, the Complaint notes that with the exception of four Buyers who were entitled to return of their funds pursuant to the express language of the Purchase and Sales Agreement, Magellan has not authorized return of any other Buyer funds in response to their demands.

**II. LEGAL STANDARD AND ANALYSIS**

"Interpleader is a procedural device used to resolve conflicting claims to money or property. It enables a person or entity in possession of a tangible res or fund of money (the stakeholder) to join in a single suit two or more claimants' asserting mutually exclusive claims to that stake." Nevada v Pioneer Cos., 245 F Supp. 2d 1120, 1125 (D Nev. 2003) (quoting 4 James Wm. Moore, et al., Moore's Federal Practice § 22.02[1] (3d ed 2002)). An interpleader action avoids the problem of multiple, conflicting claims to a single fund by forcing all "claimants" to a limited amount of money to resolve their potentially adverse claims all at once, before the same judge. See, e.g., State Farm Fire & Casualty Co. v. Tashire, 386 U.S. 523, (1967). As the Ninth Circuit has stated, an "[i]nterpleader's primary purpose is not to compensate, but rather to protect stakeholders from multiple liability as well as from the expense of multiple litigation." Aetna Life Ins. Co. v. Bayona, 223 F.3d 1030, 1034 (9th Cir. 2000). Furthermore, interpleader is an equitable remedy and is governed by equitable principles. Id.

In order to properly invoke a statutory interpleader action, the plaintiff must establish that there are "two or more adverse claimants, of diverse citizenship . . . [who] are claiming or may claim to be entitled to such money or property. . . ." 28 U.S.C. § 1335(a)(1). Additionally, 28 U.S.C. § 2361 provides for nationwide service on all claimants and allows a district court in a statutory interpleader action to enjoin any state or federal proceedings affecting the disputed funds. 28 U.S.C. § 1397 further permits statutory interpleader actions to be brought at any place where one or more of the claimants reside.

An interpleader action usually involves two distinct stages. See Mid-American Indem. Co. v. McMahan, 666 F. Supp. 926, 928 (S.D. Miss. 1987). During the first stage, the court determines whether the plaintiff/stakeholder has the right to compel the adverse claimants to interplead and litigate their claims to the fund in one proceeding. Id. At this point, the court determines whether the prerequisites to statutory interpleader have been met. If the court decides that interpleader is available, it may issue an order discharging the stakeholder and directing the claimants to interplead. Wright & Miller, Federal Practice and Procedure: Civil 3d § 1704, at 624-627 (3d ed. 2001). The court may also make any other order that is appropriate and convenient for the resolution of the competing claims. Id. During the second stage, the court will adjudicate the defendants' adverse claims to the interplead funds. New York Ins. Co. v. Connecticut Dev. Auth., 700 F.2d 91, 95 (2d Cir. 1983). The second stage generally proceeds like any other civil action and it is ultimately resolved when the district court enters judgment in favor of a defendant who is lawfully entitled to the interplead funds. See Diamond Shamrock Oil & Gas Corp. v. Commissioner of Revenues, 422 F.2d 532, 534 (8th Cir. 1970).

With respect to the first stage of an interpleader action, the date a statutory interpleader is "commenced," is the date when the disputed funds are deposited with the Clerk of the Court. See In Re Enron Corporation Securities, Derivative & ERISA Litigation, 391 F. Supp. 2d 541, 563 (S.D. Tex. 2005); Murphy v. Travelers Ins. Co., 534 F.2d 1155, 1159 (5th Cir. 1976) ("The deposit requirement is a jurisdictional prerequisite to a suit under the interpleader statute. 28 U.S.C. § 1335."). Accordingly, Wells Fargo requests an Order from this Court permitting it to deposit with the Clerk of Court, in an interest bearing account, the disputed funds in the Escrow Accounts identified in Wells Fargo's Complaint, together with any and all additional interest actually earned thereon up to the date of such deposit. Wells Fargo states that good cause for such an Order exists because (1) the deposit of the funds is required any time a situation like this exits pursuant to the interpleader statute, 28 U.S.C. § 1335(a)(2); (2) notice of Wells Fargo's intent to deposit the funds has been provided to all interested parties at their last known address; (3) no potential successor

escrow agent has been proposed by Magellan; and (4) deposit of the funds will avoid delay and expense proceeding with the interested parties' substantive claims.

The Court agrees with Wells Fargo's position. As its Motion to Deposit makes clear, Wells Fargo has already been maintaining the disputed funds in an interest bearing account for the benefit of the interested parties, and as of June 30, 2009, the cumulative amount of the Funds, including accrued interest through June 2009 was $11,050,708.98. The Court notes that none of the interested Defendant/Claimants, including Magellan, have taken issue with the Court permitting Wells Fargo to deposit the disputed funds with the Clerk of the Court. As such, the Court will grant Wells Fargo's Motion to Deposit. At the same time, the Court sees no reason to further delay the rightful disbursement of interplead funds by forcing Wells Fargo to file an unnecessary Discharge Motion, in light of the fact that Wells Fargo is clearly a "disinterested stakeholder" and the Court's jurisdiction over this matter cannot be reasonably questioned.

With respect to Wells Fargo's status as a disinterested stakeholder, the Court notes that Wells Fargo is simply holding the disputed funds in escrow without attempting to assert any interest in them. See Schirmer Stevedoring Co., Ltd. v. Seabord Stevedoring Corp., 306 F.2d 188, 193-94 (9th Cir. 1962). Furthermore, Wells Fargo contends that is has not used any portion of the disputed funds to compensate itself for services rendered as Escrow Agent, as Wells Fargo was paid a separate lump sum annually by Magellan for escrow services. Nor has Wells Fargo retained for its own benefit any portion of the interest accrued through investment of the funds in the Wells Fargo Advantage Funds Government Money Market Fund. Wells Fargo also claims that its internal records itemize the portion of the funds traceable to each individual buyer's net deposit in the Escrow Accounts, including all interest accrued thereon both before and after Wells Fargo's resignation as Escrow Agent and filing of this action.

With respect to the Court's jurisdiction, the amount in controversy clearly exceeds $500, since the funds provided to Magellan under its Purchase and Sale Agreements and placed in escrow are over $11 Million. Because a statutory interpleader action only requires

"minimal diversity," Cripps v. Life Ins. Co., 980 F.2d 1261, 1265 (9th Cir. 1992), which is met when "two or more" adverse claimants are of diverse citizenship, that jurisdictional element is likewise met as the claimants to the disputed funds are citizens of a variety of states and foreign nations. The final jurisdictional requirement, namely, that two or more adverse claimants may be to be entitled to the disputed funds is evidenced by the number of requests for disbursement made by the purchasers of Magellan's ill-fated cruise ship seeking to recoup lost monies.

Consistent with the purpose of protecting the disinterested stakeholder, upon satisfying the requirements of statutory interpleader and a deposit of the disputed of funds with Clerk of the Court, 28 U.S.C. § 2361 authorizes the court to "discharge the plaintiff from further liability," permanently enjoin claimants from instituting or prosecuting other claims with respect to the funds at issue,[1] and "make all appropriate orders to enforce its judgment." Central Bank of Tampa v. United States, 838 F. Supp. 564, 567 (M.D. Fla. 1993) (internal citations omitted). Upon satisfaction of the jurisdictional prerequisites, "[t]he court should readily grant discharge of the [disinterested] stakeholder." 4 Moore's Federal Practice § 22.03(2)(a); see also id. § 22.04(6)(b) ("Once a disinterested stakeholder deposits the stake with the court, the stakeholder should be dismissed from the action."). "The law normally regards the plaintiff in an interpleader action as having been discharged of full responsibility regarding the interplead[] funds when the funds have been paid into the registry of the court and the parties have had notice and opportunity to be heard." Central Bank of Tampa, 838 F. Supp. At 567 (internal citations omitted).

As such, because the Court will unquestionably assume jurisdiction over this interpleader action, once Wells Fargo appropriately and without objection deposits all of the

---

[1] "Because what entitles a stakeholder to bring an interpleader action in the first place is the prospect of multiple liability, in the typical case the protection provided by that device is limited to the interplead[] defendants' competing claims to the stake. Thus, the normal rule is that interpleader protection does not extend to counterclaims that are not claims to the interpleaded funds." Prudential Ins. Co. of Am. v. Hovis, 553 F.3d 258, 264 (3d Cir. 2009).

1 disputed funds with the Clerk of the Court, the Court will discharge Wells Fargo from this
2 action and will dismiss with prejudice all counter-claims that have been filed against it by
3 the various Defendants, in so far as such claims seek to recover a portion of the interplead
4 funds.

**Accordingly,**

**IT IS HEREBY ORDERED** granting Plaintiff Wells Fargo's Motion to Deposit Funds, (Dkt.#168).

**IT IS FURTHER ORDERED** denying as moot Defendant Magellan Owners Association's Motion to Dismiss, (Dkt.#148).

**IT IS FURTHER ORDERED** directing Plaintiff Wells Fargo to deposit with the Clerk of Court, in an interest bearing account, the disputed funds in the Escrow Accounts identified in Wells Fargo's Complaint, together with any and all additional interest actually earned thereon up to the date of such deposit, and provide notice to all Claimants/Defendants. Wells Fargo shall make this deposit on or before February 1, 2010.

**IT IS FURTHER ORDERED** that Defendants will have 10 calendar days after Wells Fargo has deposited the disputed funds with the Clerk of the Court to file an objection. Only objections that attempt to challenge the nature or manner of the deposit by Wells Fargo will be accepted by the Court.

**IT IS FURTHER ORDERED** that 20 days after the disputed funds have been deposited, Wells Fargo will be discharged from this action and all counter-claims that have been filed against it relating to the interplead funds will be dismissed with prejudice.

**IT IS FURTHER ORDERED** that Wells Fargo will have 20 calender days after it has deposited the disputed funds with the Clerk of the Court to file its Motion for Attorney Fees. See Sun Life Assur. Co. of Canada v. Sampson, 556 F.3d 6, 8 (1st Cir. 2009) ("It is settled that a federal court has discretion to award costs and counsel fees to the stakeholder in an interpleader action whenever it is fair and equitable to do so.) (Internal quotations and citations omitted).

**IT IS FURTHER ORDERED** denying all Motions requesting the immediate disbursement of funds as premature and unripe, (Dkt.## 201,215,217, 222, 223,231.)

**IT IS FURTHER ORDERED** directing the remaining Claimants/Defendants, to the extent practical, to meet and confer in an attempt to establish an orderly process for the adjudication of claims to the interplead funds and the prosecution of any cross-claims against Magellan. The remaining Claimants/Defendants must meet and confer within 45 calendar days after Wells Fargo has deposited the disputed funds with the Clerk of the Court.

**IT IS FURTHER ORDERED** that within 20 calendar days after satisfying the Court's meet and confer requirement, the remaining Claimants/Defendants shall, to the extent practical, file a single Joint Proposed Scheduling Order with the Court that sets forth a time line for the adjudication and disbursement of the interplead funds and the resolution of any independent cross-claims asserted against Magellan. If Claimants/Defendants cannot agree on a single Joint Proposed Scheduling Order, the various Parties must, as early as possible, request leave from the Court to file a separate Joint Proposed Scheduling Order.

**IT IS FURTHER ORDERED** granting Defendant Charles E. Miller, Sr. and Rita S. Miller Revocable Trust's Motion to Allow Electronic Filing by a Party Appearing without an Attorney, (Dkt.#130).

DATED this 23rd day of December, 2009.

_____
Mary H. Murguia
United States District Judge

- 8 -